IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

**ELISSA HULNICK,**

        **Plaintiff,**

**v.**

**ROYAL CARIBBEAN CRUISES, LTD.,**
**A Liberian Corporation,**

        **Defendant.**

_____/

## COMPLAINT FOR DAMAGES

Plaintiff, **ELISSA HULNICK** (hereinafter "Plaintiff"), through undersigned counsel, files suit against Defendant, **ROYAL CARIBBEAN CRUISES, LTD. ("Royal Caribbean")** (hereinafter "Defendant"), alleging upon information and belief as follows:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1.      This is an action for damages in excess of the jurisdictional limits of this Court, exclusive of costs and interest. Plaintiff is seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees. This Court has admiralty jurisdiction pursuant to 28 USC §1333.

2.      At all times material hereto, Defendant was and is a for-profit corporation, which is based in and/or with agents in Miami, Florida, and is authorized to conduct and is conducting business in the State of Florida. Defendant has consented to jurisdiction and venue in this Court. Defendant requires in the contract of carriage that all cases filed by passengers be filed in this jurisdiction.

3.     At all times material hereto, Defendant transported fare-paying passengers on cruises aboard the vessel M/S INDEPENDENCE OF THE SEAS and other vessels.

4.     At all times material hereto, Defendant owned, operated, managed and/or controlled M/S INDEPENDENCE OF THE SEAS.

5.     At all times material hereto, Plaintiff was a fare paying passenger aboard the M/S INDEPENDENCE OF THE SEAS for the purpose of enjoying a vacation cruise.

6.     At all times material hereto, Defendant was the co-designer, co-manufacturer and/or co-marketer of a surfing simulator known as the "FlowRider" (the "FlowRider") which Defendant decided to incorporate into the construction and/or refurbishment of its cruise ships, including the M/S INDEPENDENCE OF THE SEAS. Defendant, through its employees and/or agents, was intimately involved in the design and/or approval of the design, the manufacturer and/or approval of the manufacture, and the marketing and/or approval of the marketing of the FlowRider incorporated into its cruise ships.

7.     At all times material hereto, Defendant had a duty to design and/or manufacture and/or approve the design and/or manufacture of the FlowRider in a reasonably safe manner and not permit the FlowRider to be designed and/or manufactured in a defective (i.e., unreasonably dangerous) condition and/or not to permit the FlowRider to be used without reasonably effective and conspicuous warnings.

8.     At all times material hereto, Defendant owed two legal duties to Plaintiff:

a.     A duty owed as the owner/operator of the cruise ship of exercising reasonable care under the circumstances in maintaining the premises of the M/S INDEPENDENCE OF THE SEAS in a reasonably safe condition and operating the vessel and the appurtenances thereon in a reasonably safe

manner; and

b.     A duty owed as the designer/manufacturer of the FlowRider of designing and manufacturing a reasonably safe FlowRider for use by its shipboard passengers with reasonable warnings and instructions.

9.     At all times material hereto, Defendant had a duty to warn its passengers on its cruise ships that the FlowRider, which it co-designed and incorporated into its cruise ship, was dangerous and had caused numerous catastrophic injuries and at least one (1) death to prior passengers.

10.     In 2004, Defendant embarked on an aggressive marketing strategy to increase passenger loyalty on its fleet of vessels.[1]  As a part of this strategy, Defendant began to heavily advertise FlowRider surfing simulators which it was designing and/or manufacturing and/or marketing and/or overseeing and approving of the designing, manufacturing and/or marketing of the FlowRider which it incorporated into its fleet of ships.

11.     The FlowRider is a simulated surfing activity that shoots a sheet of water over a sloped surface to simulate the surface of a wave. Participants attempt to ride this wave by, first, lying on their belly on a small board (boogie boarding) and then, later, crouching on their knees while riding the wave, with the eventual goal of standing on the board (surfing).

12.     FlowRider, Inc., and its predecessor, Wave Loch, Inc. originally designed the FlowRider for shore-side use.[2]  Defendant, however, decided to install FlowRiders on its cruise ships, either during the initial construction of the ships or, later, as an addition to the ships during their refurbishment. Defendant, through its employees, designers, safety advisors, engineers,

---

[1] http://www.flowrider.com/royal-caribbean-installs-their-16th-flowrider/
[2] The FlowRider was created by Wave Loch, Inc. Wave Loch sold the rights to the FlowRider to FlowRider, Inc. in 2014.

consultants and agents, was intimately involved in the substantial modification of the design of the FlowRiders which were manufactured and then incorporated into its ships by shipbuilding teams.

13.    In its joint marketing materials with this Defendant, FlowRider, Inc., represents to the public that Defendant is its partner[3] and that the two companies have a longstanding and amazing relationship.[4] The joint marketing materials, which benefit Defendant, claim that the FlowRider is "super safe" and "fun."[5]

14.    Currently, Defendant operates nineteen (19) FlowRiders on fifteen (15) of its fleet of ships.[6] Defendant is the only cruise line in the world which has participated in the design and incorporation of FlowRiders into its fleet of cruise ships. The FlowRider has become a cornerstone of Defendant's marketing campaign to the public. Defendant uses the FlowRider as a draw for families and children[7] and to increase its business and profitability.

15.    Defendant's marketing department created and/or approved the creation of promotional materials which state that the FlowRider "is money in the bank" because it appeals to kids.

16.    The promotional materials contain assertions that "our rise is designed to handle any wipe-outs," and represent that the FlowRider waveform is a composite membrane ride surface that absorbs the energy of impacts. The literature states that those who ride on the FlowRider "may wipe-out, but they will get back up again and again and again."

17.    The M/S INDEPENDENCE OF THE SEAS was launched in 2008. Defendant's engineers, architects and other employees and/or agents acting on Defendant's behalf, were

---

[3] http://www.flowrider.com/new-royal-caribbean-ship-two-new-flowriders/#.WmeLZLCWyM8
[4] *See,* f.n.1.
[5] *See,* f.n.3.
[6] *Id.*
[7] *See,* f.n.1.

integrally involved in the modification of the original product design and then the manufacture, installation, and/or approval of the design, manufacture, construction and installation of the FlowRiders on the cruise ship. Defendant is engaged in the ongoing business of designing and manufacturing FlowRiders, as well as designing and creating signs, warnings and instructions regarding the use of the FlowRiders, and placing the FlowRiders into the cruise market.

18.     At the time that the M/S INDEPENDENCE OF THE SEAS was constructed in 2008, Defendant modified the design, but made no effort to alter the safety parameters to adjust for the shipboard design of the FlowRider to reduce the number of injuries or the severity of injuries involving passengers on its FlowRiders. Instead, Defendant required its passengers to sign waivers of liability in an attempt to isolate itself from liability. Defendant required its passengers to sign waivers of liability notwithstanding the fact that such waivers are legally prohibited, void and unenforceable pursuant to 46 U.S.C. § 30509(a)(2). *See Johnson v. Royal Caribbean Cruises, Ltd.,* 449 Fed. Appx. 846 (11th Cir. 2011) (unpublished).

19.     Defendant employs a dedicated group of personnel who are directly involved in the design and construction of FlowRiders on its cruise ships. Defendant uses a group of employees (architects, engineers, designers and consultants) in its shore-side "New Building & Innovation Department" (i.e., "NewBuild" Department) who are hired to coordinate and oversee the construction and refurnishing of its cruise ships. In addition to its employees, Defendant utilizes agents to assist in the design and engineering of the FlowRiders which are incorporated into its cruise ships. Defendant analyzes issues of safety before products, such as the FlowRider, are incorporated into its fleet of cruise ships. Defendant's team of architects, engineers, designers, consultants and other experts make decisions whether to change the design of products originally designed by other companies before the product is incorporated into Defendant's cruise ships.

20.     Defendant's employees in its NewBuild Department include members of the cruise ship safety forum and the chairman of the forum's safety steering committee.

21.     Defendant modified the original design of the land based FlowRider since it was first designed by the original designer.

22.     In 2018, when Plaintiff boarded the M/S INDEPENDENCE OF THE SEAS with her husband to enjoy a vacation cruise for their twentieth wedding anniversary, Defendant, directly and through its employees and agents, had designed, manufactured and incorporated, and/or approved and oversaw the design, building, and incorporation of seventeen (17) FlowRiders on fourteen (14) of its cruise ships, namely the *Freedom of the Seas* (2006), *Liberty of the Seas* (2007), *Independence of the Seas* (2008), *Allure of the Seas* (x2) (2010), *Oasis of the Seas* (x2) (2009), *Navigator of the Seas* (2014), *Voyager of the Seas* (2014), *Quantum of the Seas* (2014), *Explorer of the Seas* (2015), *Anthem of the Seas* (2015), *Ovation of the Seas* (2016), *Harmony of the Seas* (x2) (2016), *Adventure of the Seas* (2016), *Symphony of the Seas* (x2) (2018), and *Mariner of the Seas* (2018).[8]

23.     Defendant through its employees and agents modified the design of the FlowRider before and during the "newbuild" and "refurbishment" processes of these cruise ships and placed the FlowRider with a modified design onto the cruise ship for use by passengers.

24.     Unlike land-based FlowRiders, Defendant's FlowRider on the M/S INDEPENDENCE OF THE SEAS has a short "wash-out" zone. Defendant modified the FlowRider by shortening the length of the wash out zone in order to fit the FlowRider onto the deck of its cruise ships. Due to the shorter length, a person who falls is propelled into the back

---

[8] http://www.royalcaribbeanincentives.com/content/uploads/2018-2019-Fleet_Guide.pdf.

wall at a high velocity. Defendant has actual knowledge that its modified (i.e., shortened) FlowRider has caused serious personal injuries to its passengers. Defendant has videos of numerous serious injuries to passengers who have violently struck the back wall of the FlowRider. Prior passengers have filed lawsuits against Defendant for injuries caused by this modified design.

25.     Defendant's partner, Waveloch and subsequently FlowRider, Inc., claim in marketing materials that the FlowRider has a "soft padded surface" or "pillowed padded surface" which they compare to the surface of a trampoline. Waveloch and FlowRider, Inc. advertise that the soft, safe and trampoline-like surface of the FlowRider is designed to absorb the energy of impact. These companies advertise in marketing materials that the FlowRider was "super safe and fun." Upon information and belief, Defendant did not design and manufacture the FlowRider with a soft, "pillow padded" or trampoline-like surface.

26.     Upon information and belief, Defendant designed the FlowRider which it installed on the M/S INDEPENDENCE OF THE SEAS and other cruise ships in its fleet of cruise ships without any devices which would reasonably minimize the number of accidents or the severity of the injuries associated with the FlowRider, such as:

- Padding systems, such as "Pillow Padding" systems;

- Trampoline-like rider surfaces; or

- Tensioned composite membrane surfaces.

27.     Upon information and belief, Defendant placed its FlowRiders on its cruise ships, with no padding or other safety devices, over steel bars and/or steel rails which are hidden from sight under the ride surface and which causes catastrophic injuries to passengers who fall and strike this hidden hazard.

28.     Padding systems and other safety features were in use on land based FlowRiders

and were readily available to Defendant to be incorporated into the design of the shipboard FlowRiders.

29.     Over the course of over twelve (12) years before Plaintiff's injury on the FlowRider, literally thousands of other passengers sustained serious personal injuries on the FlowRider including paralyzing neck injuries, fractures to ankles, legs, backs, necks, wrists, and hands. At least one passenger ("Mr. Flowers") died after falling and striking his neck on a FlowRider during a cruise. Defendant has actual notice of the unreasonably dangerous condition of the FlowRider by the multitudes of passengers who have complained of unsafe conditions of the FlowRider throughout its fleet; who have been treated in the ship infirmaries on Defendant's fleet of cruise ships; who have required emergency room care and treatment ashore for crippling injuries sustained on Defendant's shipboard FlowRiders; and who have required ongoing medical treatment for injuries sustained on Defendant's shipboard FlowRiders.

30.     Upon information and belief, after the death of Defendant's passenger, Mr. Flowers, who fell on his neck while riding a FlowRider during a cruise, Defendant asked the original designer of the FlowRider, Wave Loch, Inc., for a reasonably effective warning of the dangers presented to the public by the product.

31.     Upon information and belief, in response to Defendant's request, the original designer sent Defendant a new, proposed warning with graphic depictions of risks of personal injury on the FlowRider."[9]

### WARNING IN LICENSING AGREEMENT
### FROM ORIGINAL DESIGNER, WAVE LOCH, LLC[10]

---

[9] There were no warnings posted in or around the FlowRider on the M/S INDEPENDENCE OF THE SEAS at the time of Plaintiff's accident in 2018.

[10] This warning was taken from Wave Loch's FlowRider Sheet Wave Attraction License to Operate and FLOW Membership Agreement. This is not necessarily the warning provided to Defendant by Wave Loch.



Defendant chose not to use the recommended warning sign provided to Defendant from the original designer of the FlowRider. Instead, Defendant chose to use no signage whatsoever to depict the seriousness of the dangers on the FlowRider. Defendant rejected the reasonably effective and conspicuous red lettered warnings which illustrated personal injuries that could happen to its passengers.

32.    Defendant posted conspicuous warning signs in and around the ship deck of the M/S INDEPENDENCE OF THE SEAS for other water-related activities offered to passengers. This sign is shown below.

**WARNING POSTED FOR OTHER WATER-RELATED ACTIVITIES**



33.     Defendant uses signs which it designed and placed in conspicuous areas around the FlowRiders on some of their other cruise ships in their fleet (i.e., M/S OASIS OF THE SEAS), however, Defendant chose not to use any signs depicting the seriousness of the risks associated with the FlowRider on the cruise ship where Plaintiff's injury occurred, the M/S INDEPENDENCE OF THE SEAS.

34.     Defendant was aware of the risks of personal injury associated with the FlowRider

and, in 2017, displayed signage on the M/S OASIS OF THE SEAS. This "old" signage did not contain the word "warning," or the language conspicuous and in prominent, red lettering.

## THE OLD SIGNAGE[11]



35.     Upon information and belief, at some period between 2017 and March 2019, Defendant decided that the old signage was not reasonably effective in conveying warnings to its passengers who participated on the FlowRiders on the M/S OASIS OF THE SEAS, and Defendant changed the signage. Defendant decided to re-design the signage to include more reasonably conspicuous warnings in red lettering and the use of icons/diagram showing the type of injuries, previously recommended by the original designer, Wave Loch.  It is located in conspicuous areas to ensure passengers see it prior to riding the FlowRider. The new signage is shown below.

---

[11] This signage was not located on the cruise ship where Plaintiff was injured. Plaintiff's injury occurred on the M/S INDEPENDENCE OF THE SEAS, where there was no signage regarding the FlowRider.

**THE NEW SIGNAGE ON M/S OASIS OF THE SEAS**



36.     Unfortunately for Plaintiff, Defendant failed to install any signage on the M/S INDEPENDENCE OF THE SEAS containing warnings or risks associated with the FlowRider at the time of Plaintiff's cruise. The area surrounding the FlowRider on Plaintiff's cruise at the time of Plaintiff's injury is shown below.

**NO SIGNAGE ON THE M/S INDEPENDENCE OF THE SEAS (DECEMBER 2018)**





37.     Due to the use of no signage, Defendant failed to warn Plaintiff of foreseeable risks

of harm which could have been reduced or avoided by providing reasonable warnings. Defendant

did not adequately warn of this particular risk of injury that it specifically knew about or should

have known about in light of generally recognized and prevailing scientific and medical knowledge which were available at the time that Defendant designed the FlowRider and incorporated it into the M/S INDEPENDENCE OF THE SEAS.

38.     Defendant's failure to provide any signage containing warnings or risks of personal injury did not convey to passengers reasonable warnings of the dangers of the FlowRider. In particular, the signage found on the M/S OASIS OF THE SEAS (in 2019) specifically stated WARNING! in red lettering and explained specific risks of injury; it contained conspicuous lettering; it stated that the passenger "will fall" and mentioned user's body "striking the surface of the FlowRider with great force" and then illustrated, with icons/diagrams, the user sustaining injuries; it contained warnings that the FlowRider is an "extreme sport" and a "high risk activity" and mentioned steps to minimize the risk of injury.

39.     Defendant, aware of the need for warnings due to risks of personal injury associated with the FlowRider, decided to have the conspicuous warnings on some of their fleet of cruise ships containing the FlowRider, but not on others including the cruise ship where Plaintiff was injured.

40.     Defendant failed to provide reasonable written instructions to Plaintiff, as required by its own operating protocols and by the original designer's instructions.

41.     Defendant failed to show Plaintiff safety videos as required by its operating protocols and by the original designer's instructions.

42.     The defective design of the FlowRider and the absence of reasonable warnings and instructions proximately caused Plaintiff to sustain permanent personal injuries.

43.     Defendant maintains records of the numerous injuries sustained by its passengers who ride on the FlowRider in its fleet of cruise ships. These records include comment cards,

incident reports, passenger and witness statements, sports deck logs, and shipboard medical records kept in the normal course of Defendant's business, as well as legal demand letters and lawsuits.

44.    On or about December 8, 2018, Plaintiff participated in the FlowRider simulated surfing/boogie board activity on the M/S INDEPENDENCE OF THE SEAS. At all times material hereto, Plaintiff was using the FlowRider in the manner which Defendant intended. Defendant did not first provide reasonable, effective written instructions to Plaintiff, or show her videos of the dangers presented by the FlowRider. Defendant did not use any signage on the cruise ship (described in paragraphs 33, 36, 37 and 38), despite Defendant using signage containing warnings and risks of personal injuries on other cruise ships in their fleet. A crewmember provided Plaintiff with quick "instructions" on how to maintain her balance on her stomach. The crewmember then provided Plaintiff was "instructions" on how to pop onto her knees while on the boogie board. On Plaintiff's attempt to get onto her knees, she was immediately displaced from the force of the water and violently thrown to the back of the activity. Plaintiff felt excruciating pain from her right hand.

45.    Upon standing, Plaintiff observed that her right pinky finger was bent to the right (dislocated), as opposed to standing upright. Plaintiff was taken to the ship's infirmary where she was diagnosed with a dislocated finger. The cruise doctor relocated the bone joint and "buddy wrapped" the finger with the adjacent finger. Plaintiff was provided pain medications to take for the remainder of the cruise. Subsequent X-rays confirmed that Plaintiff suffered a dislocated finger with a fragment of bone chipped away at the site of dislocation.

46.    Plaintiff underwent months of medical care and physical therapy to recover from her injury. Due to the nature of the injury, Plaintiff is left with permanent disfigurement of her finger.

47.     The accident occurred due to the unsafe design of the FlowRider, the negligent instruction and supervision by Defendant, Defendant's negligent failure to correct the dangerous condition and/or warn Plaintiff of the aforementioned conditions, including, ignoring the warnings recommended by the co-designer, and the unreasonably dangerous design and condition of the FlowRider.

48.     Defendant knew or should have known of the dangerous and unsafe conditions alleged above due to thousands of similar incidents aboard its vessels, yet failed to take reasonable steps to correct the hazards or warn Plaintiff of the hazards, and placed the FlowRider on the M/S INDEPENDENCE OF THE SEAS in an unreasonably dangerous and defective condition.

49.     As a direct and proximate result of Defendant's negligence and the unreasonably dangerous design of Defendant's FlowRider, Plaintiff sustained injuries to her body and mind.

50.     Defendant's conduct is intentional, willful, wanton and/or arbitrary and capricious and/or grossly negligent, entitling Plaintiff to punitive damages.

51.     All pre-conditions to this action have been met or waived.

## COUNT I – NEGLIGENCE

52.     Plaintiff adopts and re-alleges paragraphs 1 through 51 above as fully set forth herein, and further alleges:

53.     On or about December 8, 2018, and continuing thereafter, Defendant breached the duty of reasonable care owed to Plaintiff by committing one or more of the following acts and/or was negligent in the operation, maintenance or control of the M/S INDEPENDENCE OF THE SEAS in the following respects:

a.      Failing to exercise reasonable care for the safety of its passengers, and creating, designing, accepting and/or approving an unreasonably designed dangerous

condition in and around the FlowRider;

b.      Failing to provide a reasonable activity for passengers, reasonably designed for the safety of its passengers;

c.      Failing to adequately train its employees;

d.      Failing to adequately supervise its employees;

e.      Failing to comply with Defendant's own operating protocols;

f.      Failing to comply with the original manufacturer's operating protocols;

g.      Failing to comply with Defendant's instructions;

h.      Failing to comply with the original manufacturer's instructions;

i.      Failing to advise its passengers of the risks explained in the FlowRider manual;

j.      Failing to hire and use a recognized safety consultant to confirm that Defendant was using appropriate signage to alert guests of the risks of injury posed by the FlowRider;

k.      Failing to require that each passenger reads and understands the risks explained in the signs and manuals regarding the FlowRider;

l.      Failing to instruct and train its employees regarding the recommended procedures in its protocols and in the original manufacturer's instructions;

m.      Hiring inexperienced or non-experienced personnel responsible for the safety of the passengers engaging in onboard activities such as the FlowRider;

n.      Failing to provide an adequate number of supervisory personnel aboard the FlowRider;

o.      Failing to warn passengers, whom Defendant knew or should have known would be using the FlowRider, of the dangerous condition which existed when passengers

participated in this activity on the ship;

p.        Failing to provide reasonable instructions to Plaintiff regarding the use of the FlowRider;

q.        Failing to investigate similar incidents on its vessels;

r.        Allowing a dangerous condition to exist notwithstanding hundreds of prior incidents involving similar accidents aboard the M/S INDEPENDENCE OF THE SEAS and other vessels in its fleet of cruise ships;

s.        Failing to adequately investigate prior and subsequent incidents involving FlowRiders on the M/S INDEPENDENCE OF THE SEAS and other vessels in its fleet of cruise ships;

t.        Failing to post adequate and conspicuous warnings to passengers (guests) of the dangerous and unsafe condition of the FlowRider activity of the M/S INDEPENDENCE OF THE SEAS and other vessels in its fleet of cruise ships;

u.        Designing, modifying, manufacturing, installing, creating and/or maintaining an unsafe FlowRider system;

v.        Failing to adopt and implement a safety protocol for FlowRider personnel to follow when people are injured on the FlowRider; and

w.        Other acts of fault and negligence which will be proven at the trial of this matter.

54.      Defendant's negligence, as described above, caused the injuries Plaintiff complains of in this lawsuit.

55.      The conduct of Defendant, as described above, directly and proximately caused the injuries and damages to Plaintiff, as follows:

a.        Plaintiff has suffered and will continue to suffer bodily injury, physical pain and

suffering, mental anguish, disability, disfigurement, physical impairment, inconvenience, and loss of capacity of the enjoyment of life;

b.     Plaintiff has incurred medical, therapy and pharmaceutical expenses and will continue to incur such expenses as long as her condition continues; and

c.     Plaintiff is entitled to punitive damages for Defendant's intentional, willful, wanton and/or arbitrary and capricious conduct.

56.    Defendant is at fault for causing Plaintiff's injuries and is liable to her for the above described damages which are continuing and/or permanent in nature.

57.    Plaintiff lost the value of part of the cruise due to her inability to partake in most of the cruise activities for the second half of her twentieth (20th) anniversary cruise with her husband.

58.    All conditions precedent to bringing this action have been satisfied.

**WHEREFORE**, Plaintiff alleges negligence of Defendant and prays that judgment be entered in Plaintiff's favor and against Defendant, for damages, costs, interest, pre-judgment interest, punitive damages, and for all other relief to which Plaintiff may be entitled by virtue of these proceedings, including trial by jury.

## <u>COUNT II – STRICT PRODUCTS LIABILITY</u>

59.    Plaintiff adopts and re-alleges paragraphs 1 through 51 above as fully set forth herein, and further alleges:

60.    At all times material hereto, Defendant owed a duty to its passengers, and in particular to Plaintiff, to maintain and operate its vessel, the M/S INDEPENDENCE OF THE SEAS, in a reasonable manner under the circumstances.

61.    Separate and apart from its duties as the vessel owner and/or operator of the M/S INDEPENDENCE OF THE SEAS, Defendant owed legal duties to Plaintiff in its capacity as the

co-manufacturer and co-designer of the FlowRider which it incorporated into its cruise ship and placed on the cruise marketplace.

62.     On information and belief, Defendant did license technology from an external company to an internal manufacture and build team. This manufacture and build team then constructed the FlowRider for a number of the Defendant's cruise ships and served as an independent third-party build team within the enterprise.

63.     On information and belief, the build team was part of the pre-operations construction effort. Once the ship was complete, the cruise ship in its entirety was transferred to an operating company and becomes an independent entity within the organization. This team then became free to build and distribute the modified "cruise ship mounted" FlowRider to any other suitable customer, essentially using RCCL as a "beta tester" for the system.

64.     On information and belief, the operating company relies completely upon the manufacturing and build team to manage, develop and test the installed technology, in this case the FlowRider. Essentially, leaving the operating company as the *de facto* purveyor of a dangerous product. In this manner, the internal transition demonstrates the badges of a company that is responsible for the release of a developed and modified technology into the stream of commerce.

65.     Under Section 402A of the Restatement (Second) of Torts (" 402A")[12], a company which manufactures, designs, sells or places into the stream of commerce any product in a

---

[12] Section 402A states:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any
contractual relation with the seller.

defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer. Designers, sellers, and manufacturers of "defective" (i.e., unreasonably dangerous) products may be held strictly liable for the damages suffered by users of the defective products in the maritime context.

66.     Defendant's wholly owned internal teams placed the FlowRider responsible for Plaintiff's injuries into the channels of commerce after participating in the manufacture and/ or design and/ or modification and/ or approval of the design of the FlowRider which was within the chain of distribution of the FlowRider product within the meaning of Section 402A.

67.     At all times material hereto, Defendant co-manufactured, co-designed, installed, modified and/or utilized the FlowRider and/ or approved the manufacture, design, installation and use of the FlowRider on the M/S INDEPENDENCE OF THE SEAS, and as such owed a duty to its passengers, and in particular to the Plaintiff, to design the FlowRider without any defects. The design of the FlowRider on the INDEPENDENCE OF THE SEAS was unreasonably dangerous for the following reasons:

- It lacked any type of padding systems (such as a "pillow padding" system), or a trampoline-like rider surface, or tension composite membrane surface or other safety devices intended to reasonably minimize the number of accidents or the severity of injuries;

- It lacked padding or cushioning or other safety devices over steel bars and/ or rails which are hidden under the ride surface which cause catastrophic injuries to passengers who fall and strike these hidden hazards;

- It contained a shortened wash-out zone such that participants who fall on the FlowRider strike the rear wall of the FlowRider at a high rate of speed causing

unnecessary and/ or additional personal injuries;

•    It lacked reasonable and conspicuous warnings.

68.    Defendant did not adequately warn of this particular risk of injury that it specifically knew about (due to numerous, serious injuries on its ships) or should have known about in light of generally recognized and prevailing scientific and medical knowledge which were available at the time that Defendant designed the FlowRider and incorporated it into the M/S INDEPENDENCE OF THE SEAS.

69.    At all times material hereto, Defendant, through its agents and/ or employees, who were acting in the course and scope of their employment and/ or agency with the Defendant, co-manufactured, co-designed, modified, installed, and utilized the FlowRider on the M/S INDEPENDENCE OF THE SEAS. The design of the FlowRider is/ was an unreasonably and dangerous design and presented a foreseeable risk of serious injury to passengers, thus constituting a breach of Defendant's duty of care to the Plaintiff.

70.    At all times material hereto, Defendant knew or had reason to know that the FlowRider was unreasonably dangerous. Defendant knew or had reason to know that the FlowRider was unreasonably dangerous because prior incidents, like the one described herein, have regularly occurred on its vessels.

71.    Defendant had a duty to warn passengers, who were unaware of the dangers involved in the FlowRider activity, that the attraction, as modified by Defendant, was likely to be dangerous and cause catastrophic injuries.

72.    Under the theory of strict products liability, a product may be defective by virtue of a design defect, a manufacturing defect or an inadequate warning.

73.    In particular, a failure to provide the warnings recommended by a manufacturer can

render a product defective.

74.     Defendant knew that the FlowRider was dangerous and had caused numerous catastrophic injuries to passengers on its cruise ships, including multiple cervical injuries resulting in paralysis and necessitating fusion surgeries. Defendant knew that the original manufacturer, Wave Loch, Inc., had recommended using a new warning explaining the dangers posed by the FlowRider used on Defendant's cruise ships to be read by Defendant's passengers. Waveloch also recommended that passengers view video instructions prior to using the FlowRider. Defendant chose to incorporate the FlowRider into its cruise ships, including the M/S INDEPENDENCE OF THE SEAS, without providing the warnings or video instructions recommended by Wave Loch, Inc.

75.     Defendant chose to conceal the warnings and instructions recommended by Wave Loch, Inc. from its passengers in order to promote its marketing efforts over the safety of its guests.

76.     By designing, manufacturing, modifying and placing an unreasonably dangerous product into the stream of commerce on its cruise ships, and not warning its passengers of such a danger (and, in particular, not using the warnings recommended by the original designer), Defendant is strictly liable under 402(a) of the Restatement of Torts for injuries to Plaintiff which were proximately caused by the FlowRider.

77.     The design defect and the lack of warnings which made the modified FlowRider onboard the M/S INDEPENDENCE OF THE SEAS inherently and unreasonably dangerous was the direct and proximate cause of the Plaintiff's injuries.

78.     The conduct of Defendant, as described above, directly and proximately caused the injuries and damages to Plaintiff, as follows:

a.      Plaintiff has suffered and will continue to suffer bodily injury, physical pain and

suffering, mental anguish, disability, disfigurement, physical impairment, inconvenience, loss of capacity for the enjoyment of life, lost wages, and diminishment of earning capacity;

b.   Plaintiff has incurred medical, hospital, nursing, therapy and pharmaceutical will expenses and continue to incur such expenses as long as this condition continues; and

c.   Plaintiff has suffered an aggravation of a pre-existing condition.

d.   Plaintiff is entitled to punitive damages for Defendant's intentional, willful, wanton and/ or arbitrary and capricious conduct.

79.   Defendant is at fault for causing Plaintiff's injuries and is liable to his for the above described damages which are continuing and/ or permanent in nature.

80.   Plaintiff lost the value of the cruise, as well as attendant travel and airfare expenses and related costs.

81.   All conditions precedent to bringing this action have been satisfied.

WHEREFORE, Plaintiff alleges strict products liability of Defendant and prays that judgment be entered in Plaintiff's favor and against Defendant, for damages, costs, interest, pre-judgment interest, punitive damages, and for all such other relief to which Plaintiff may be entitled by virtue of these proceedings, including trial by jury.

## REQUEST FOR JURY

Plaintiff is entitled to and requests trial by jury against Defendant on all issues so triable as a matter of right.

Dated: November 27th, 2019

Boynton Beach, Florida                              Respectfully submitted,

                                                   */s/ Angelo A. Gasparri*
                                                   Angelo A. Gasparri
                                                   Florida Bar No.: 32158
                                                   GASPARRI LAW GROUP
                                                   *Counsel for Plaintiff*
                                                   1080 S. Federal Highway
                                                   Boynton Beach, Florida 33435
                                                   Tel. No.        (561) 235-3286
                                                   Facsimile:      (561) 935-9706
                                                   angelo@drlclaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27th, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served via service of process on:  Bradley H. Stein, *Registered Agent for Defendant,* Royal Caribbean Cruises, Ltd., 1050 Caribbean Way, Miami, Florida 33132.

                                                   */s/ Angelo A. Gasparri*
                                                   Angelo A. Gasparri (32158)

## SERVICE LIST

| | |
|---|---|
| Angelo A. Gasparri, Esq. | Bradley H. Stein |
| *Counsel for the Plaintiff* | *Registered Agent for Defendant* |
| GASPARRI LAW GROUP | Royal Caribbean Cruises, Ltd.. A Liberian Corp. |
| 1080 S. Federal Highway | 1050 Caribbean Way |
| Boynton Beach, Florida 33435 | Miami, Florida 33132 |
| Tel. No.        (561) 235-3286 | |
| Facsimile:      (561) 935-9706 | |
| Email: angelo@drlclaw.com | |